1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

ROBERT EARL SCOTT,                           NO.  C12-523-RSM-JPD

9
                            Plaintiff,

10
            v.                                        REPORT AND
                                                      RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

12
                            Defendant.

13

14          Plaintiff Robert Earl Scott appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be AFFIRMED.

20

21

22          [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
     Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
23   Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
     suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are
24   ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

1    I.    FACTS AND PROCEDURAL HISTORY

2          At the time of the administrative hearing, plaintiff was a thirty-nine year old man with a

3    twelfth grade education as well as a certificate in Business Computer Training.  Administrative

4    Record ("AR") at 52-53.[2]  His past work experience includes employment as a sales clerk at 7-

5    Eleven, a landscape laborer, painter, metal worker, and construction cleanup worker.  AR at

6    54, 56, 84.  Plaintiff was last gainfully employed as a sales clerk at 7-Eleven.  AR at 54.

7          Plaintiff filed applications for SSI payments and DIB on December 8, 2008, alleging an

8    onset date of January 1, 2006.  AR at 46, 211-13, 214-17.[3]  AR at 46.  Plaintiff asserted during

9    the administrative hearing that he is disabled due to a heart condition, joint and muscle

10   disorder, sleep apnea, obesity, muscle spasms, panic attacks, and post-traumatic stress disorder

11   ("PTSD").  AR at 60-67, 70-71.

12         The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 110-

13   13, 116-120.  Plaintiff requested a hearing, which took place on March 16, 2011.  AR at 44-

14   90.  On May 23, 2011, the ALJ issued a decision finding plaintiff not disabled and denied

15   benefits based on her finding that plaintiff could perform a specific job existing in significant

16   numbers in the national economy.  AR at 33-34.  The Appeals Council denied plaintiff's

17   request for review, AR at 1-4, making the ALJ's ruling the "final decision" of the

18   Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 30, 2012, plaintiff

19   timely filed the present action challenging the Commissioner's decision.  Dkt. 5.

20   _____

21        [2] Plaintiff testified during the hearing that although he attended the twelfth grade, he
     did not receive a high school diploma or earn his GED.  AR at 53.

22        [3] The ALJ stated during the hearing and in her written decision that plaintiff
     protectively filed his Title XVI application for SSI on November 24, 2008, and his Title II

23   application for DIB on November 8, 2008.  AR at 20, 46.  However, plaintiff asserts that he
     filed both of his applications on December 8, 2008.  Dkt. 18 at 2.  Based upon this Court's

24   review of the applications, the Court agrees with plaintiff that both applications appear to have
     been filed on December 8, 2008.  AR at 211-13, 214-17.

REPORT AND RECOMMENDATION - 2

## II.       JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.       STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

1   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

2   erroneously rejected evidence may be credited when all three elements are met).

3                    IV.     EVALUATING DISABILITY

4            As the claimant, Mr. Scott bears the burden of proving that he is disabled within the

5   meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

6   Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

7   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

8   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

9   423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

10  of such severity that he is unable to do his previous work, and cannot, considering his age,

11  education, and work experience, engage in any other substantial gainful activity existing in the

12  national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

13  99 (9th Cir. 1999).

14           The Commissioner has established a five step sequential evaluation process for

15  determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

16  404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

17  step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

18  any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

19  one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

20  §§ 404.1520(b), 416.920(b).[4]  If he is, disability benefits are denied.  If he is not, the

21  Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

22

23           [4] Substantial gainful activity is work activity that is both substantial, i.e., involves
    significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §
24  404.1572.

REPORT AND RECOMMENDATION - 4

or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On May 23, 2011, the ALJ issued a decision finding the following:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.      The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date.

3.   The claimant has the following severe impairments: cardiac disease; obesity; sleep apnea; fibromyalgia and chronic fatigue syndrome; lateral epicondylitis; and depression.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is limited to lifting and carrying 10 pounds occasionally, and less than 10 pounds frequently.  The claimant can stand and/or walk for 2 hours in an 8-hour workday, and sit for 8 hours in an 8-hour workday.  The claimant can push and pull 20 pounds with his upper extremities, and 30 pounds with his lower extremities.  The claimant can never climb ladders, ropes, or scaffolds.  The claimant can frequently balance, and occasionally stoop, kneel, crouch, and crawl.  The claimant must avoid concentrated exposure to fumes, odors, dusts, and gases.  The claimant is further limited to work involving routine tasks, due to concentration problems.

6.   The claimant is unable to perform any past relevant work.

7.   The claimant was born on XXXXX, 1971 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.[5]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision.

AR at 22-34.

---

[5]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ err at step three of the sequential evaluation process?

2.     Did the ALJ err by failing to adequately consider the effects of the plaintiff's obesity?

3.     Did the ALJ err in evaluating the medical opinion evidence?

Dkt. 18 at 1-2; Dkt. 19 at 2.

## VII.     DISCUSSION

A.     <u>The ALJ Did Not Err at Step Three of the Sequential Evaluation Process</u>

Plaintiff contends that the ALJ in this case failed to comply with 20 C.F.R. §

404.1520(d), which provides that the Commissioner must determine whether a claimant's

impairments medically equal a listing.  Dkt. 18 at 4 (citing 20 C.F.R. § 404.1526(b)(3)) ("If

you have a combination of impairments, no one of which meets a listing . . . we will compare

your findings with those for closely analogous listed impairments.  If the findings related to

your impairments are at least of equal medical significance to those of a listed impairment, we

will find that your combination of impairments is medically equivalent to that listing.").

Specifically, plaintiff asserts that "the ALJ concluded in heading 4 that the Plaintiff's

impairments did not medically equal a listing.  However, in the subsequent discussion

pertaining to each impairment and whether each met a listing, the ALJ did not once consider

whether the Plaintiff's impairments, when combined, medically equaled a listing, or explain

why they did not."  *Id*. at 4-5.  Plaintiff asserts that this error was harmful, because the ALJ

found that plaintiff's severe impairments included cardiac disease, obesity, sleep apnea,

fibromyalgia and chronic fatigue syndrome, lateral epicondylitis and depression.  *Id*. at 5.  In

light of "the many impairments present and the nature of the impairments," plaintiff contends

that the ALJ erred in failing to adequately address this requirement.  *Id.*

REPORT AND RECOMMENDATION - 7

1        The Commissioner responds that the plaintiff has the burden of producing medical

2   evidence that establishes all of the requisite medical findings. Dkt. 19 at 3 (citing *Bowen v.*

3   *Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  However, plaintiff has failed to present a plausible

4   theory as to how he met or equaled any of the listings. *Id.* (citing *Lewis v. Apfel,* 236 F.3d 503,

5   514 (9th Cir. 2001) (providing that the Court should not find that the ALJ's listing analysis was

6   in error where the claimant has proffered no plausible theory as to who his combined

7   impairments are medically equivalent to the criteria for a listed impairment).  The

8   Commissioner asserts that "[a]t most, [p]laintiff alleges that his obesity caused overall

9   functional problems.  A generalized assertion of functional problems is not enough to establish

10  disability at step three, regardless of the impairment causing the functional problems." *Id.* at 4

11  (citing *Tackett*, 180 F.3d 1100).

12       Plaintiff replies that "defendant cites to a case, suggesting that the Plaintiff has not

13  produced medical evidence.  However, the record contains ample evidence of the Plaintiff's

14  impairments and limitations.  The issue here is whether the defendant satisfied its clear

15  obligation of considering whether the evidence meets certain standards." Dkt. 20 at 2.

16  Specifically, "the ALJ did not discuss more specifically what listings and impairments were

17  considered in combination, or why a listing was not equaled." *Id.*

18       At step three, the ALJ must consider whether the claimant's impairments meet or equal

19  one of the impairments in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R.

20  Part 404, Subpart P.  If a claimant's impairment does not meet the criteria specified in the

21  listings, he or she is still disabled if the impairment equals a listed impairment.  20 C.F.R. §

22  404.1520(d).  If a claimant has more than one impairment, the Commissioner must determine

23  "whether the combination of [the] impairments is medically equal to any listed impairment."

24  20 C.F.R. § 404.1526(a).  The claimant's symptoms "must be considered in combination and

must not be fragmentized in evaluating their effects." *Lester v. Chater,* 81 F.3d 821, 829 (9th Cir. 1995) (citations omitted).   A finding of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).  Plaintiff bears the burden of proving the existence of impairments meeting or equaling a listing.  *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005).

In *Lewis v. Apfel*, the Ninth Circuit considered "whether the ALJ adequately explained his finding that [the claimant]'s impairments did not equal a listed impairment."  236 F.3d at 514.  In that case, "the ALJ did not discuss the combined effects of Lewis's impairments, or compare them to any listing.  Unlike the claimants in *Lester* and *Marcia*, however, Lewis has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment.  Nor has he pointed to evidence that shows that his combined impairments equal a listed impairment."  *Id.*  Thus, the court concluded that the ALJ did not err in concluding that plaintiff's impairments did not equal a listed impairment.

The ALJ in this case found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"  AR at 23.  Although the ALJ explained in detailed why plaintiff's conditions did not meet a listing, she did not specifically explain in the body of her written decision why plaintiff's combined impairments do not equal a listing.  AR at 23-24.

The Court finds plaintiff's arguments unpersuasive.  Although plaintiff contends that the combination of his impairments together equal a listing level of impairment, he does not proffer any plausible theory as to how his combined impairments are medically equivalent to the criteria for a listed impairment, let alone meet his burden of establishing medical equivalence.  *See Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency

REPORT AND RECOMMENDATION - 9

determination, unless the claimant presents evidence in an effort to establish equivalence."); *Lewis*, 236 F.3d at 514 (noting that plaintiff "offered no theory, plausible or otherwise, as to" how his combined impairments equaled a listing.).

Moreover, the ALJ sufficiently supported her conclusion that plaintiff's impairments did not meet or equal a listing with the evaluation of the medical evidence.  AR at 23-24. Plaintiff does not challenge any of the ALJ's specific findings, but simply asserts that the ALJ failed to "discuss more specifically what listings and impairments were considered in combination, or why a listing was not equaled."  Dkt. 20 at 2.  Where, as here, the ALJ thoroughly discussed each of the potentially applicable listings for plaintiff's impairments, and explained why the medical evidence did not show that these listings were met, the Court cannot agree that the ALJ's failure to elaborate regarding the issue of medical equivalence was erroneous.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments.  The Secretary's four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'").  Thus, as argued by the Commissioner, plaintiff's step three arguments lacks merit.

B.    The ALJ Properly Considered Plaintiff's Obesity in Formulating His RFC

With respect to plaintiff's obesity, which the ALJ identified as a "severe" impairment at step two, AR at 22, the ALJ noted at step three that "there is no specific medical listing for obesity[.]"  AR at 23.  Nevertheless, the ALJ "considered the effects of this impairment on each body system included in the listings.  The objective medical evidence in the claimant's record does not show that the claimant's obesity is of listing level severity in this instance." AR at 23.

Plaintiff contends that although "the ALJ acknowledged that the Plaintiff's degree of obesity was at the 'morbid' level, the most severe degree of obesity . . . the ALJ only briefly considered whether the Plaintiff's obesity met or medically equaled a listing[.]" Dkt. 18 at 5. However, plaintiff asserts that "an ALJ is required to consider the effects of obesity in formulating a claimant's residual functional capacity . . . The relevant administrative guidance explains that in considering the impact of obesity on an individual's capacity for sustained work activities, 'an assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.'" *Id*. (citing SSR 02-1p).  Plaintiff asserts that the ALJ erred by failing "to consider the specific effects obesity and symptoms related to obesity" in formulating plaintiff's RFC.  *Id*. at 6.

The Commissioner responds that "the ALJ properly considered the effects of Plaintiff's obesity at all steps of the sequential evaluation process," and is not required to recite certain "magic words" in her written decision. Dkt. 19 at 4.  Specifically, "the ALJ complied with SSR 02-1p by evaluating the impact of Plaintiff's obesity at steps two and three and including all of Plaintiff's functional limitations supported by the record in the residual functional capacity finding.  In fact, under her step two findings, the ALJ discussed her obligation to consider the effects of obesity when evaluating a claimant's limitations at all steps of the sequential evaluation in her decision." *Id*. (citing AR at 23).  Moreover, the Commissioner points out that at step three, the ALJ "assured Plaintiff that 'the undersigned has considered the effects of [his obesity] on each body system included in the listings.'" *Id*. (citing AR at 23).  Finally, the Commissioner points out that plaintiff has failed to "show that any medical report or opinion was rejected because it was based on Plaintiff's obesity," or that "any functional limitation attributable to his obesity was erroneously omitted from the residual functional

capacity finding." *Id*. at 5.  For example, although non-examining physician Don Clark, M.D.

opined that plaintiff's obesity would preclude him from performing heavy work, he opined that

it would not preclude light work.  AR at 80.  In fact, the ALJ's RFC is even more limited than

Dr. Clark's findings.  Dkt. 19 at 5.

Plaintiff replies that although "magic words are not required," a simple "assurance" by

the ALJ that obesity has been considered is also not sufficient to comply with the requirements

of SSR 02-1p.  Dkt. 20 at 2.  Furthermore, "in light of the Plaintiff's combination of

impairments, obesity is clearly material.  The ALJ's failure to consider the Plaintiff's obesity

and to explain the findings and determinations required by the SSR, even in the briefest of

manners, is error."  *Id*. at 3.

SSR 02–1p recognizes obesity as a "medically-determinable impairment," and states

that ALJs should consider the combined effects of obesity with other impairments under the

Listing of Impairments when assessing a claimant's RFC.  Specifically, SSR 02–1p provides

that the ALJ should consider "the effect obesity has upon the individual's ability to perform

routine movement and necessary physical activity within the work environment . . . . [as] [t]he

combined effects of obesity with other impairments may be greater than might be expected

without obesity."  In addition, "as with any other impairment, we will explain how we reached

our conclusions on whether obesity caused any physical or mental limitations."  SSR 02–01p,

adopting the National Institutes of Health's classification and diagnosis of obesity according to

Body Mass Index (BMI), considers anyone with a BMI over 30 to be "obese."[6]

---

[6] The Clinical Guidelines recognize three levels of obesity.   Level 1 includes BMIs of
30.0–34.9. Level II includes BMIs of 35.0–39.9.  Level III, termed "extreme" obesity and
representing the greatest risk for developing obesity-related impairments, includes BMIs
greater than or equal to 40.  SSR 02-1p.

There is no evidence in the record, and plaintiff has not identified any, indicating that plaintiff's obesity limits his functioning in any manner not already accounted for in the ALJ's RFC assessment. While plaintiff's physicians were aware of his obesity, the medical record is silent – with only one exception - as to how plaintiff's obesity may have exacerbated his impairments. The sole exception is the testimony of the medical expert, Dr. Clark, that plaintiff's obesity would limit him to light rather than heavy work. Specifically, Dr. Clark testified that "with his weight and with the pain he experiences, I don't think he's going to go back to the heavy work that he was doing in the metal job . . . from anything I could find in the record, he's capable of light work." AR at 80. In fact, the ALJ found plaintiff capable of only "sedentary work . . . except that the claimant is limited to lifting and carrying 10 pounds occasionally, and less than 10 pounds frequently." AR at 25.

Thus, the fact that plaintiff is obese does not, by itself, establish functional limitations and restrictions. As plaintiff has not identified any functional limitations due to his obesity which would have impacted the ALJ's analysis, the Court finds no error. *See Burch*, 400 F.3d at 684 ("[T]he ALJ adequately considered Burch's obesity in his RFC determination. Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider.").

C.      The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

1.      *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or

REPORT AND RECOMMENDATION - 13

1     the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

2     *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

3     physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

4     contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

5     157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

6     summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

7     making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

8     merely state his/her conclusions.  "He must set forth his own interpretations and explain why

9     they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

10     (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.

11     *Reddick*, 157 F.3d at 725.

12         The opinions of examining physicians are to be given more weight than non-examining

13     physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

14     uncontradicted opinions of examining physicians may not be rejected without clear and

15     convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining

16     physician only by providing specific and legitimate reasons that are supported by the record.

17     *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

18         Opinions from non-examining medical sources are to be given less weight than treating

19     or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

20     opinions from such sources and may not simply ignore them.  In other words, an ALJ must

21     evaluate the opinion of a non-examining source and explain the weight given to it.  Social

22     Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

23     more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

24     non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.    *Daniel Garcia, M.D.*

Daniel Garcia, M.D., began treating plaintiff in December 2010, and met with plaintiff four times between December 2010 and March 2011.  Dr. Garcia completed a medical assessment of plaintiff's physical capacity in March 2011.  AR at 837-40, 841.  Dr. Garcia noted that plaintiff's diagnoses included "cardiomyopathy with a fairly low ejection fraction . . . history of asthma documented in [Dr. Garcia's] office, body wide pain consistent with fibromyalgia, and psychiatric issue consistent with bipolar disease."  AR at 841.  Dr. Garcia indicated that plaintiff was limited to less than two hours of standing or walking in an eight-hour day.  AR at 838.  Dr. Garcia opined that he did not believe plaintiff was capable of sustaining full-time employment due to his medical impairments.  AR at 840-41.

The parties agree that the limitations assessed by Dr. Garcia are nearly identical to the ALJ's RFC assessment in this case, with the exception of Dr. Garcia's opinion that plaintiff is limited to less than two hours of standing and walking in an eight-hour day.  Dkt. 18 at 11; Dkt. 19 at 7 (citing AR at 30).  The ALJ rejected this finding by Dr. Garcia on the grounds that several aspects of Dr. Garcia's March 2011 medical source opinion letter were contradicted by his routine progress notes and "inconsistent with the objective findings from his treatment records."  AR at 30-31.  Specifically, the ALJ noted that (1) Dr. Garcia had listed asthma on his assessment, but did not diagnose asthma in his routine treatment notes; (2) Dr. Garcia wrote that plaintiff had a history of fibromyalgia, but did not test for this condition; and (3) Dr. Garcia limited plaintiff to standing and walking for less than two hours per day due to his cardiomyopathy with a "fairly low ejection fraction," but this limitation was inconsistent with the results of a June 2008 echocardiogram showing that plaintiff's ejection fraction had

improved to between 40% and 50%.  AR at 30-31, 818-26.  Thus, the ALJ found that "[b]ased on the numerous inconsistencies between Dr. Garcia's statements and the routine treatment records, very little weight can be given to Dr. Garcia's opinion."  AR at 31.

Plaintiff contends that "the ALJ's reasoning does not meet the standard of specific and legitimate reasons, supported by substantial evidence, for rejecting the contradicted opinion of a treating provider."  Dkt. 18 at 8 (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)).  Specifically, plaintiff asserts that "the ALJ's selective reading of both Dr. Garcia's treatment notes and the record at large undermines the legitimacy of her explanation for rejecting the doctor's opinion."  *Id.*  First, plaintiff argues that plaintiff was diagnosed with asthma in February 2006 by his prior primary care physician, Dr. Steven Dresang.  *Id.* at 9 (citing AR at 421, 841) (Dr. Garcia reported that plaintiff had a "history of asthma documented in my office"). Plaintiff points out that "the ALJ did not distinguish between Dr. Dresang's asthma-related findings and other aspects of his report in assigning 'great weight' to Dr. Dresang's opinion," and did not explain his "differential consideration of this condition" in assessing these two doctors' opinions.  *Id.*  The ALJ incorporated all the other environmental limitations identified by Dr. Garcia into her RFC assessment.  *Id.* (citing AR at 837, 839).

Second, plaintiff argues that the ALJ erred by faulting Dr. Garcia for assessing limitations related to fibromyalgia when he had not tested for this condition, and for relying upon plaintiff's subject belief that he had fibromyalgia.  Specifically, plaintiff points out that the ALJ's own step two finding indicated that plaintiff's fibromyalgia was a "severe" impairment. Dkt. 18 at 9.  As with asthma, Dr. Dresang had also diagnosed fibromyalgia, and the ALJ gave "great weight" to Dr. Dresang's opinion.  AR at 28, 733.  Finally, with respect to the ALJ's statement that Dr. Garcia's conclusion that plaintiff would be limited to less than two hours of standing and walking in an eight-hour day was inconsistent with the results of an

1    echocardiogram, plaintiff asserts that the echocardiogram at issue was not "current" enough to

2    discount Dr. Garcia's opinion.  Dkt. 18 at 10.  Thus, plaintiff asserts that "the inconsistencies

3    identified by the ALJ are premised on a selective review of the relevant evidence." *Id.*

4         The Commissioner responds that "determining that an opinion is contradicted by

5    treatment notes is "a permissible determination within the ALJ's province."  Dkt. 18 at 7

6    (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The Commissioner argues

7    that the reasons cited by the ALJ for discounting aspects of Dr. Garcia's opinion were specific

8    and legitimate.  For example, "the ALJ reasonably found one of the bases for Dr. Garcia's

9    opinion unsupported by objective findings or a diagnosis of asthma" because "Dr. Garcia's

10   progress notes contained no reference to difficulties with asthma or a diagnosis of asthma."

11   AR at 30, 818-26.  To the extent that Dr. Garcia discussed asthma-related symptoms in his

12   progress notes, he noted that plaintiff's lunges were clear.  AR at 819, 824-25.  When he noted

13   wheezing, he diagnosed pneumonia with bronchospasm rather than asthma.  AR at 822.

14   Similarly, the Commissioner points out that the ALJ reasonably determined that Dr. Garcia's

15   opinion regarding plaintiff's fibromyalgia was undermined by the lack of objective findings of

16   fibromyalgia, because "Dr. Garcia accepted Plaintiff's reports that he felt like he gad

17   fibromyalgia instead of performing the diagnostic testing himself." Dkt. 19 at 7.

18        The Commissioner asserts that the most important issue was the ALJ's disagreement

19   with Dr. Garcia's "expla[nation] that the basis for his standing and walking limitation was

20   Plaintiff's cardiomyopathy."  *Id.* (citing AR at 838).  The Commissioner points out that "long

21   before Dr. Garcia's treatment relationship began, Plaintiff's ejection fraction had returned to

22   relatively normal levels.  Nothing in the record reflects a worsening of Plaintiff's fraction since

23   it returned to normal levels." *Id.* (citing AR t 75, 781).   Thus, the Commissioner asserts that

24   the ALJ could reasonably give little weight to Dr. Garcia's opinions, based upon the

1    inconsistencies identified when Dr. Garcia's opinions were compared to his treatment notes.

2    *Id.*

3           Finally, the Commissioner asserts that "the ALJ was presented with multiple opinions

4    by a treating source (Dr. Dresang) who opined Plaintiff was capable of standing or walking for

5    between two and six hours in an eight-hour day, and another treating source opinion (Dr.

6    Garcia) who indicated Plaintiff could not stand or walk for up to two hours in a day." *Id*.  The

7    ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Id*.

8    (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).  Thus, "the ALJ reasonably

9    found that the opinion given by the physician who performed the diagnostic testing and noted

10   the objective findings in his treatment notes was more reliable than the opinion given by the

11   physician who did not appear to perform his own diagnostic testing or note objective findings."

12   *Id*. at 9 (citing *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (providing that when an

13   examining physician bases his opinion on the same clinical findings as a treating physician, but

14   differs only in his conclusion, the conclusions of the examining physician are not substantial

15   evidence).[7]

16          As argued by the Commissioner, the ALJ in this case could reasonably assign greater

17   weight to Dr. Dresang's opinion that plaintiff was capable of standing or walking for between

18   two and six hours in an eight-hour day than to Dr. Garcia's opinion that plaintiff could stand or

19   walk for less than two hours, in light of the numerous inconsistencies between Dr. Garcia's

20   opinion and his routine progress notes.  *See Bayliss*, 427 F.3d at 1216.  Plaintiff correctly

21   points out that Dr. Dresang diagnosed plaintiff with fibromyalgia and asthma, and the ALJ did

22

23          [7] Plaintiff appears to have abandoned this issue in his reply brief. In fact, he fails to address
     any of Commissioner's responses to his arguments regarding the medical opinion evidence. *See*
24   Dkt. 20.

1   not reject these diagnoses in her written decision.  However, the ALJ could reasonably afford

2   less weight to Dr. Garcia's opinion than Dr. Dresang's opinion in light of the fact that Dr.

3   Garcia appears to have relied upon Dr. Dresang's objective testing and diagnoses, as well as

4   plaintiff's subjective complaints, rather than making objective findings and confirming

5   diagnoses himself.  AR at 30.

6       Finally, the ALJ did not err by relying upon the results of a June 2008 echocardiogram

7   to discount Dr. Garcia's opinion that plaintiff's cardiomyopathy restricts him to standing or

8   walking less than two hours per day.  Although plaintiff asserts that "one would reasonably

9   expect [an objective measure] to be current to be considered probative in weighting current

10  opinion evidence," plaintiff has not identified any evidence showing that plaintiff's

11  cardiomyopathy was worsened since the June 2008 echocardiogram.  Dkt. 18 at 10.  Thus,

12  plaintiff's June 2008 echocardiogram results provided a specific and legitimate reason for the

13  ALJ to reject Dr. Garcia's opinion regarding plaintiff's ability to stand and walk.  The ALJ did

14  not err.

15          *3.      John Olson, M.D.*

16      John Olson, M.D., served as plaintiff's primary care physician before Dr. Garcia.  He

17  completed a physical evaluation of the plaintiff in October 2010.  AR at 735-38.

18  Specifically, Dr. Olson opined that plaintiff was able to lift 25 pounds occasionally and 10

19  pounds frequently.  He found no postural limitations, although he noted that plaintiff had

20  environmental restrictions due to asthma.  AR at 736.  Dr. Olson opined that plaintiff could

21  stand for only one hour but sit for eight hours in an eight-hour day, and that he would

22  experience weakness with standing and lifting.  AR at 735-36.

23      The ALJ summarized Dr. Olson's evaluation of plaintiff's physical functioning, and

24  assigned "moderate weight" to Dr. Olson's opinion.  AR at 30.  Although the ALJ

REPORT AND RECOMMENDATION - 19

questioned Dr. Olson's finding of "no indication of alcohol or drug abuse, despite the claimant's reports regarding such illicit use," she nevertheless found that "Dr. Olson's opinion is consistent with the overall record that shows that the claimant's impairments do not preclude him from engaging in work activities."  AR at 30.

Plaintiff contends that the ALJ erred by rejecting Dr. Olson's opinion that plaintiff was limited to less than sedentary work because he was unable to stand for more than one hour in an eight-hour work day.  Dkt. 18 at 11.  Specifically, plaintiff asserts that the ALJ inaccurately stated that Dr. Olson's opinion was consistent with evidence showing that plaintiff was able to engage in work activities, because "Dr. Olson's opinion is actually consistent with Dr. Garcia's conclusion that the Plaintiff was not capable of performing even 'sedentary' work due to limitations in his capacity to stand and walk over the course of a typical workday."  *Id.*  In addition, "the ALJ did not address in her decision Dr. Olson's finding regarding the plaintiff's capacity for standing and walking."  *Id*. at 12.

The Commissioner responds that "sedentary work requires occasional standing and walking, which is defined as 'very little up to one-third of the time.'"  Dkt. 19 at 10 (citing SSR 83-10).  The Commissioner asserts that "the ALJ reasonably interpreted Dr. Olson's opinion that Plaintiff could work an 8-hour day, but with only 1 hour of standing, to be within the general range of sedentary work."  *Id.*  In any event, "to the extent the ALJ erred by giving this opinion moderate weight but not restricting Plaintiff to 1 hour of standing a day in the [RFC], any error was harmless" because it was "inconsequential to the ultimate nondisabiltiy determination."  *Id.* (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  The Commissioner points out that "the ALJ discounted Dr. Olson's opinion because he was unaware of Plaintiff's illicit drug use and drug seeking behavior" and "the ALJ gave great weight to Dr. Dresang's opinion that Plaintiff could stand or walk between 2 to 6

hours in a day, substantial weight to Dr. Merrill's opinion that Plaintiff could stand or walk up to 6 hours in a day, and some weight to Dr. Clark's opinion that Plaintiff could stand up to 6 hours in a day." *Id*. at 10-11.  Thus, the Commissioner contends that any error in assessing Dr. Olson's restriction to standing for only one hour per day "would not have altered the outcome due to the multiple contrary opinions by both treating and examining physicians that were credited by the ALJ." *Id*. at 11.

The Court agrees with the Commissioner.  Although plaintiff is correct that Dr. Olson's opinion that plaintiff can stand for only one hour in an eight-hour work day is inconsistent with the definition of sedentary work used in the Social Security context, the ALJ interpreted Dr. Olson's statement that plaintiff could sit for eight hours in an eight hour work day as an indication that Dr. Olson felt that plaintiff was capable of sedentary work. *See* 20 C.F.R. § 404.1567(a), 20 C.F.R. § 415.967(a).[8]  This is evident from the ALJ's statement not that he was adopting Dr. Olson's findings in full, but that "Dr. Olson's opinion is consistent with the overall record that shows that the claimant's impairments do not preclude him from engaging in work activities." AR at 30.  Indeed, the ALJ also cited Dr. Olson's failure to acknowledge plaintiff's history of drug use as a reason not to afford his opinion greater weight.  AR at 30.

---

[8] These regulations define "sedentary work" as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  In addition, SSR 96-9p defines "occasionally" as occurring from very little up to one third of the time, and would generally total no more than about 2 hours of an 8–hour workday.  Thus, SSR 96-9p provides that the full range of sedentary work typically involves sitting for a total of about 6 hours of an 8–hour workday, and standing or walking for a total of approximately 2 hours during an 8-hour workday.

1      To the extent that the ALJ erred by failing to acknowledge the discrepancy between

2  Dr. Olson's finding and the applicable definition of sedentary work, the Court finds the

3  ALJ's error harmless.  As argued by the Commissioner, the ALJ only afforded Dr. Olson's

4  opinion "moderate weight," and clearly adopted other physicians' opinions providing that

5  plaintiff could stand or walk for at least two-hours in an 8-hour workday.  In these

6  circumstances, the Court is not convinced that the outcome of this case would have been

7  different if the ALJ had expressly discussed this aspect of Dr. Olson's opinion.  *See Molina v.*

8  *Astrue*, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (noting that decisions have recognized

9  harmless errors where ALJ's errors did not alter ALJ's decision, and recognizing the "general

10  principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate

11  nondisability determination.' . . . In other words, in each case we look at the record as a whole

12  to determine whether the error alters the outcome of the case.") (cited cases omitted).

13                *4.      Victoria McDuffee, Ph.D.*

14      Victoria McDuffee, Ph.D. conducted a DSHS psychological evaluation of the plaintiff

15  in September 2010.  AR at 718-38.  Based on an interview with plaintiff and a mental status

16  examination, Dr. McDuffee opined that the plaintiff exhibited severe depressive symptoms, as

17  well as marked pain behaviors.  AR at 720.  She diagnosed bipolar disorder and a pain disorder

18  "associated with both psychological factors and general medical condition."  AR at 721.  Dr.

19  McDuffee assessed mild to moderate limitations in cognitive factors, and mild to severe

20  limitations in social factors.  AR at 721-22.  For example, Dr. McDuffee indicated that plaintiff

21  has "severe" limitations in his ability to "relate appropriately to co-workers and supervisors"

22  because his "mania, depression interfere with his relationships.  Poor social skills."  AR at 722.

23  She also noted that "his moods are labile – difficulty regulating his emotions."  AR at 722.  Dr.

24  McDuffee assigned a GAF score of 35 because the "combination of his physical issues,

REPORT AND RECOMMENDATION - 22

1  fatigue, and unstable mood *impair his judgment and thinking processes*.  His communication is

2  impaired.  His social skills are impaired."  AR at 721 (emphasis added).[9]  Following the mental

3  status examination, however, Dr. McDuffee indicated that with respect to plaintiff's cognition,

4  his perception is unimpaired, he is fully oriented and has "no impairment" in his attention and

5  concentration, and demonstrates appropriate thought content and concrete thought processes.

6  AR at 725.

7          The ALJ summarized Dr. McDuffee's findings in detail, and observed that Dr.

8  McDuffee "indicated that the claimant had not used alcohol or substances, despite the objective

9  evidence in the record to the contrary."  AR at 29-30.  In addition, the ALJ found Dr.

10  McDuffee's opinion to be "inconsistent with the objective findings found throughout the

11  record, and with many of the objective findings from her evaluation, in which the claimant was

12  cooperative, with appropriate thought content, and no impairment in attention and

13  concentration."  AR at 30.  Accordingly, the ALJ found that "little weight can be given to Dr.

14  McDuffee's opinion."  AR at 30.

15          Plaintiff's primary argument is that the ALJ's finding that Dr. McDuffee's opinion was

16  inconsistent with her "many of the objective findings from her evaluation" is unsupported by

17  substantial evidence.  Dkt. 18 at 13-15.  Specifically, plaintiff asserts that "the ALJ points to

18

19          [9] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
    clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
20  ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
    A GAF score falls within a particular 10-point range if either the symptom severity or the level
21  of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
    "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
22  in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious
    symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment
23  in social, occupational, or school functioning," such as the lack of friends and/or the inability
    to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and
24  communication" or "major impairment in several areas, such as work or school, family
    relations, judgment, thinking or mood."

1    [only] three of Dr. McDuffee's findings on examination to support the conclusion that the

2    doctor's written report was inconsistent with her [own] evaluation: the Plaintiff was

3    cooperative during the evaluation, had appropriate thought content, and had no impairment in

4    attention and concentration." *Id*. (citing AR at 30).  However, plaintiff asserts that "as Dr.

5    McDuffee did not assess more than mild limitations related to plaintiff's capacity for sustained

6    pace and concentration, her report contains no inconsistency in this regard.  In fact the only

7    cognitive limitation assessed by Dr. McDuffee was a moderate impairment in the Plaintiff's

8    ability to exercise judgment and make decisions, which Dr. McDuffee explained was based on

9    the Plaintiff's 'concrete thinking process [which] may limit his problem solving abilities.'" *Id*.

10   at 14 (citing AR at 722).  Thus, plaintiff asserts that it is "unclear how Dr. McDuffee's report

11   can reasonably be said to be 'inconsistent' with the observation that the Plaintiff had

12   appropriate thought content." *Id*.  Plaintiff also points out that following the mental status

13   examination, Dr. McDuffee also checked boxes indicating that plaintiff was "confused," and

14   had an inappropriate, tearful, and blunted affect, and rapid, hyperverbal, and monotone speech,

15   which is arguably consistent with her other opinions. *Id*. (citing AR at 725).  Finally, plaintiff

16   asserts that the ALJ's statement that Dr. McDuffee's opinion was "inconsistent with the

17   objective findings found throughout the record" fails to meet the standard of specificity. *Id*.

18       The Commissioner responds that the ALJ properly provided specific and legitimate

19   reasons for discounting Dr. McDuffee's opinion, because "incongruities between a doctor's

20   responses to questions and that doctor's medical records and treatment notes are valid reasons

21   for rejecting the opinions given on the form." Dkt. 19 at 11 (citing *Tommasetti*, 533 F.3d at

22   1041) (rejection proper where limitations on form were not supported by doctor's own medical

23   records).  For example, the Commissioner points out that although Dr. McDuffee did not

24   observe symptoms of insomnia and mania, and declined to report whether she observed

REPORT AND RECOMMENDATION - 24

1    symptoms of a thought disorder, she nevertheless "based her limitations in exercising

2    judgment, relating appropriately to coworkers and supervisors, and maintaining appropriate

3    behavior in a work setting, in part, on his mania, fatigue, and thought processes." *Id*. at 12

4    (citing AR at 722).  In addition, "the ALJ noted that Dr. McDuffee appeared to unaware of

5    Plaintiff's documented substance abuse, which undermined the reliability of the unobserved

6    limitations." *Id*. (citing AR at 29, 438, 463-64, 721, 785-86, 822).

7         The Commissioner further argues that contrary to the marked and severe limitations she

8    assessed, Dr. McDuffee indicated that during the mental status examination plaintiff's behavior

9    was cooperative, his perception was unimpaired, his attention and concentration were within

10   normal limits, his thought content was appropriate, and his thought processes were concrete.

11   AR at 725.  As a result, the Commissioner contends that "the ALJ reasonably found Dr.

12   McDuffee's opinion insufficiently supported by clinical findings." *Id*. (citing AR at 30).

13        Finally, with respect to the ALJ's observation that Dr. McDuffee's findings were

14   inconsistent with other evidence in the record, the Commissioner asserts that the ALJ noted

15   elsewhere in her decision that consultative examiner Dr. Davis assessed a GAF score of 60,

16   which indicates only moderate symptoms and difficulty in social, occupational, or school

17   functioning.  Dkt. 19. at 13 (citing AR at 600).  "Compared to Dr. Davis' assessment, which

18   was supported by objective findings determined through an in-person evaluation and consistent

19   with the overall record, Dr. McDuffee's assessment was undermined by her lack of

20   observations of symptoms, her unawareness of Plaintiff's drug use, and unsupported by the

21   severity of her clinical findings." *Id*. (citing *Burch*, 400 F.3d at 679).

22        The ALJ provided specific and legitimate reasons for affording little weight to Dr.

23   McDuffee's opinion, and those reasons are supported by substantial evidence in the record.  As

24   discussed above, the ALJ found that Dr. McDuffee's opinions that plaintiff suffered from

REPORT AND RECOMMENDATION - 25

"marked to severe limitations with insomnia and mania" and "marked to severe limitation in social functioning" to be (1) inconsistent with her own findings on mental examination "in which the claimant was cooperative, with appropriate thought content, and no impairment in attention and concentration"; (2) "inconsistent with the objective findings found throughout the record"; and (3) further undermined by Dr. McDuffee's failure to acknowledge plaintiff's history of substance abuse.

As a threshold matter, the Court agrees with plaintiff that the second reason cited by the ALJ was impermissibly vague, as the ALJ neglected to cite to the specific "objective findings found throughout the record" that Dr. McDuffee's conclusions were inconsistent with. An ALJ may properly reject a doctor's opinion that is not supported by objective evidence. *Meanel v. Apfel,* 172 F.3d 1111, 1113–14 (9th Cir. 1999). But to merely state that a medical opinion is inconsistent with the overall objective evidence in the record is not specific enough to reject an examining doctor's opinion. *See Embrey,* 849 F.2d at 421–22; *see also Regennitter v. Soc. Sec. Comm'r,* 166 F.3d 1294, 1299 (9th Cir. 1999) ("Conclusory reasons will not justify an ALJ's rejection of medical opinion."). Thus, the ALJ's conclusory finding that Dr. McDuffee's opinion was inconsistent with the overall objective evidence in the record is not a specific and legitimate reason to give her opinion limited weight. Nevertheless, the Court finds this error was harmless because, as discussed below, the first and third reasons cited by the ALJ for giving Dr. McDuffee's opinion limited weight were specific, legitimate, and supported by substantial evidence in the record.

Following the mental status examination, Dr. McDuffee indicated that plaintiff's behavior was cooperative, his perception was unimpaired, his attention and concentration were within normal limits, his thought content was appropriate, and his thought processes were concrete. AR at 725. The Court agrees with the ALJ that these findings appear inconsistent

REPORT AND RECOMMENDATION - 26

with Dr. McDuffee's GAF score of 35, and particularly Dr. McDuffee's explanation that this GAF score was based upon plaintiff's "combination of . . . physical issues, fatigue, and unstable mood [which] impair his judgment and thinking processes.  His communication is impaired.  His social skills appear impaired."  AR at 721.  *See Bayliss,* 427 F.3d at 1216.  The ALJ also noted that Dr. McDuffee assessed "marked to severe" limitations with insomnia and mania, although she had not observed such symptoms."  AR at 29.  "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.  Thus, the ALJ's finding that some of Dr. McDuffee's conclusions appeared to inadequately supported by clinical findings, or undermined by her lack of knowledge of plaintiff's substance abuse history, were specific and legitimate reasons to afford her opinions less weight.

Accordingly, the Court finds that the ALJ's findings with respect to Dr. McDuffee's opinion are rational interpretations of the evidence, and plaintiff's alternative interpretation is not sufficient to undermine the ALJ's conclusion. *See Thomas*, 278 F.3d at 954 (where there is more than one rational interpretation of the evidence, the Court must uphold the ALJ's interpretation).  The ALJ did not err in rejecting her opinion.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED, and this matter dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 20th day of March, 2013.

James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 27